UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                               :     Civil Action No.

ROGER BATTACHARIA,                 :     13-CV-7222 (NSR)(PED)

                           :

               Plaintiff,      :

                           :

    -against-                  :

                           :

PERNOD RICARD USA, LLC,       :

                           :

                           :

               Defendant.    :
------------------------------------------------------------ X

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S RULE 56(A)
## MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

Marc O. Sheridan, Esq.
Markus & Sheridan, LLP
*Attorneys for Plaintiff*
*Roger Battacharia*
116 Radio Circle
Suite 304
Mt. Kisco, NY 10549

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**................................................................................1

**SUMMARY OF FACTS**................................................................................3

**ARGUMENT**................................................................................9

I.     PLAINTIFF'S CLAIMS FOR RACE, COLOR, AND/OR NATIONAL ORIGIN UNDER DISCRIMINATION TITLE VII AND THE NYSHRL SHOULD NOT BE DISMISSED AS MATTER OF LAW................................................................................10

    A.  Plaintiff has established a *Prima Facie* Case of Unlawful Discrimination............................10

    B.  Pernod Ricard did not have a good faith belief that Roger Battacharia violated its policies and therefore its claimed legitimate reason is a pretext..............................16

II.  PLAINTIFF'S CLAIMS FOR RETALIATION UNDER TITLE VII AND THE NYSHRL SHOULD NOT BE DISMISSED AS MATTER OF LAW..................... .................................20

III.  PLAINTIFF'S CLAIMS FOR UNLAWFUL DISCRIMINATION AND RETALIATION UNDER THE NYCHRL SHOULD NOT BE DISMISSED AS MATTER OF LAW...............22

IV. PLAINTIFF'S ERISA CLAIM SHOULD SURVIVE SUMMARY JUDGMENT AS A MATTER OF LAW……………………………………………………………………23

**CONCLUSION**................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

*Barriera v. Bankers Trust,* 2003 U.S. Dist. LEXIS 18601 (S.D.N.Y. October 14, 2013)...................... 20

*Bennett v. Health Management Systems, Inc.,* 92 A.D.3d 29, 936 N.Y.S.2d 112 (1st Dep't 2011)........... 22

*Brioch v. Incorporated Village of Southhampton, et al.,* 462 Fed. Appx. 39 (2d Cir. 2012)......................... 13

*Brown v. Daikin America Inc.,* 756 F.3d 219 (2d Cir. 2014)................................................................... 13

*Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53 (2006). ............................................................ 20

*Conway v. Microsoft*, 414 F. Supp. 2d 450, (S.D.N.Y. 2006) ...................................................... 15

*Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988)........................................... 24

*Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.2d 1219, 1224 (2d Cir. 1994) .................. 13

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)........................................................12

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000).............................................. ........................13,14,16

*Holcomb* v. Iona College, 521 F.2d 130, (2dCir.2008)...............................................................................12

*Holleman v. Art Crafting, Inc.,* 2014 U.S. Dist. LEXIS 139916 (E.D.N.Y. September 30, 2014)............17,20

*Howard v. MTA Metro-North Commuter R.R.*, 866 F. Supp. 2d. 196 (S.D.N.Y. 2011)..................................10

*Kirk v. Schindler Elevator Corporation*, 2004 U.S. Dist LEXIS 17402  (S.D.N.Y. August 31, 2004).........23

*Kwan v. Andalex Group, LLC*, 737 F.3d 834 (2d Cir. 2013)........................................................................21

*Leszczuk v. Lucent Technologies, Inc.*, Civ. No. 03-CV-05766 (E.D. Penn. June 10, 2005)................... 27

*Lyman v. New York Presbyterian Hospital  et al.,*

      2014 U.S. Dist. LEXIS 95492 (S.D.N.Y. July 14, 2014)................................................................17

*Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003)..........................................................................13

*Matter of Electchester Housing Project v. Rosa*, 22 A.D. 2d 772, 639 N.Y.S.2d 848 (2d Dep't 1996).........23

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007)..............................................................12

*McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)...........................................................................10

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.* 715 F.3d 102 (2d Cir. 2013)………………..…22

*Ramos v Marriot International*, 134 F. Supp. 2d 328, (S.D.N.Y. 2001)...……………………………………..17

*Roge v. NYP Holdings, Inc.* 257 F.3d 164, (2d Cir. 2001)…………………………………………………..12

*Staub v. Proctor Hospital*, 560 U.S.411 (2011)……………………………………………………………..19

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, (1981)…………………………………………17

*University of Texas Southwestern Medical Center v. Nasser*, 570 U.S. __, 133 S. Ct. 2517 (2013)…..…...... 21

*Weslowski v. Zugibe*, 14 F. Supp. 3d 295 (S.D.N.Y. 2014)……………………………………………… 15

## PRELIMINARY STATEMENT

According to the Merriam Webster dictionary, the term "scapegoat" is defined as a person who is unfairly blamed for something that others have done. The Dreyfus Affair is a prime historical example. In 1894, a French army captain, Alfred Dreyfus was convicted of treason for allegedly selling military secrets to Germany. Captain Dreyfus, who was Jewish, denied the allegations, but was nevertheless court-martialed. Soon after his conviction, evidence pointing to another French officer came to light and a ground-swell of support ensued in France challenging Captain Dreyfus' conviction as fueled by Anti-Semitism. The novelist, Émile Zola, famously published a letter titled "J'accuse", attacking the French Army for covering up a mistaken conviction. Four years after Captain Dreyfus' conviction, a document implicating Dreyfus was found to be a forgery and another superior officer in the French army's intelligence section confessed to fabricating the document in order to strengthen the army's position. Captain Dreyfus was eventually pardoned and rejoined the French army. Unfortunately, history tends to repeat itself, and like Captain Dreyfus, Plaintiff has become the scapegoat because he is Indian.

Mr. Battacharia has brought suit to redress Defendant's unlawful employment discrimination against him based upon his color, race, and/or national origin and to remedy retaliation against him in violation of Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C. §§ 2000e ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Plaintiff has also brought a cause of action under ERISA on the basis that he was an intended beneficiary or member of the class of intended beneficiaries of Defendant's severance policy, which has been improperly and unlawfully withheld.

As demonstrated by the record evidence, Plaintiff makes this claim for unlawful discrimination, because:

1.      Defendant Pernod Ricard USA, LLC ("Pernod Ricard" or the "Company") could not have reasonably believed in good-faith that Mr. Battacharia wrote the e-mails he was accused of sending or violated its policies as Mr. Ambani, the alleged victim, and Mr. Nicodemo, the Company's former Chief Financial Officer, acknowledge that Mr. Battacharia lacked the requisite knowledge to engage in the misconduct for which he was terminated;

2.      the alleged misconduct for which he was fired was a pretext for unlawful discrimination as a similarly situated employee, Jason Gers, a Caucasian employee and Mr. Battacharia's former report, was not terminated by the same decision maker (i.e., Emmanuel Cargill, Defendant's Senior Vice-President Human Resources) for similar misconduct for which termination had been requested by an aggrieved executive at Pernod Ricard;

3.      he was terminated one day before three members of the Marketing team, all Caucasian, were terminated for poor performance, yet all provided with severance payments, accrued vacation pay, and benefits, and continued employment.  Mr. Battacharia, the only Indian-American, who was eligible to receive severance under Defendant's policy based on the elimination of his position as Marketing Director – Tequila Avión, was terminated without any compensation, and ultimately replaced several weeks later by a Caucasian with no Spirits experience into a newly-created Brand Director Tequila position; and

4.      over a five-year period, and despite protestations to Pernod Ricard's Human Resources Director, Bennett Schuberg, he was subjected to disparate treatment regarding requested promotions for Marketing Director positions although qualified for them.

2

## SUMMARY OF FACTS[1]

Plaintiff Roger Battacharia, an Indian-American, was hired by Pernod Ricard in October 2007 as a Director of Business Analysis and Insights.[2] For the next five years, Mr. Battacharia worked tirelessly to secure a position in Pernod Ricard's Marketing Department. It was his career ambition. Plaintiff's Aff. at ¶8. Despite exceeding management's expectations on his performance reviews, his internal applications for a brand director level position in the Marketing Department were repeatedly rebuffed, and given to less qualified Caucasians.[3] More importantly, while Mr. Battacharia did ultimately secure the Marketing Director for Tequila Avión (in the Spirits Marketing Department) in September 2012, it was viewed by Human Resources as a token position. (Battacharia Tr. at 238).[4]

In mid-May 2013, John Nicodemo, Pernod Ricard's former Chief Financial Officer was informed by Bryan Fry, Pernod Ricard's Chief Executive Officer and Martin Crane, Senior Vice-President-Spirits Sales, that they had both received emails from Mr. Nicodemo's direct report, Ashish Ambani, Pernod Ricard's Vice-President of Marketing and Finance and Brand Analysis.[5] The two e-mails were from two different e-mail addresses that contained Mr. Ambani's name, and referenced organizational changes that Mr. Ambani desired regarding the commercial insights

---

[1]   The Court is respectfully referred to a Plaintiff's Rule 56.1 Counter-Statement of Material Facts and Plaintiff's February 2, 2014 Affidavit in Opposition ("Plaintiff's Aff.") for a more complete and additional factual predicate.

[2]   *See*, ¶11 of Plaintiff's Complaint, annexed as Exhibit "2" Affirmation of Marc O. Sheridan, Esq. in Opposition to Defendant's Motion for Summary Judgment ("Sheridan Aff.").

[3]   *See*, transcript of the July 16, 2014 deposition of Plaintiff Roger Battacharia ("Battacharia Tr.") at 154-155, 158-159, and 169. All pages of the Battacharia Tr. cited herein are attached to the Sheridan Aff. at Ex. "1".

[4]   *See also*, transcript from the September 4, 2014 deposition of Bennett Schuberg ("Schuberg Tr. at 28-29). All pages of the Schuberg Tr. cited herein are attached to the Sheridan Aff. at Ex. "9".

[5]   *See*, transcript from the September 8, 2014 deposition of John Nicodemo ("Nicodemo Tr.") at 78.  All pages of the Nicodemo Tr. cited herein are attached to the Sheridan Aff. at Ex. "6".

group, which Mr. Nicodemo and Mr. Ambani had previously discussed, but which Mr. Nicodemo did not approve. Mr. Nicodemo was not carbon-copied on the e-mails. (Nicodemo Tr. at 35)[6]

On May 16, 2013, Mr. Nicodemo met with Mr. Ambani to discuss the two e-mails to Bryan Fry and Martin Crane as the content reflected both information only known to Mr. Ambani as well as his writing style. [7] At the time the emails were allegedly sent, Mr. Battacharia had not worked with Mr. Ambani for more than seven months. *See*, Plaintiff's Aff. at ¶6. Plaintiff was not privy to the subject matter of these e-mails, specifically the discussions between Mr. Ambani and Mr. Nicodemo regarding the Company direction and leadership and/or organizational changes in the consumer insights group, or Mr. Ambani's intentions as contained in the language of the e-mails. (Ambani Tr. at 68-69; Nicodemo Tr. at 40).

At the meeting, Mr. Ambani denied sending the e-mails, and volunteered that he received three phony e-mails about a month prior to their meeting.[8]   (Ambani Tr. at 66).   Mr. Ambani told Mr. Nicodemo that he had not reported these e-mails to anyone at the Company, and instead deleted them because they made personal references and he did not want to have any source to go back them.  (Ambani Tr. at 76).  Mr. Nicodemo requested that he retrieve the e-mails, Mr. Ambani did so with the help of Pernod Ricard's IT department, and the two met again during the evening of May 16, 2013. (Nicodemo Tr. at 78).

Mr. Nicodemo believed that the person who wrote the e-mails had Indian insight, "knew Indian" or "understood Indian nomenclature and stuff", or was familiar with Mr. Ambani's Indian

---

[6]   *See also*, copy of e-mails dated May 1, 2013 and May 13, 2013 to Bryan Fry, Pernod Ricard's CEO and Martin Crane, Pernod Ricard's Senior Vice-President of Spirits Sales, Bates stamped Pernod Ricard 56 and 57 annexed to the Sheridan Aff. at Ex. "5".

[7]   *See*, transcript of the August 27, 2013 deposition of Michelle Cubbon ("Cubbon Tr.") at 75.  All pages of the Cubbon Tr. cited herein are attached to the Sheridan Aff. at Ex. "14".

[8]   *See*, transcript of the August 25, 2014 deposition of Ashish Ambani ("Ambani Tr.") at 66.  All pages of the Ambani Tr. cited herein are attached to the Sheridan Aff. at Ex. "4".

background because there was some reference in the emails about being Indian. (Nicodemo Tr. at 79, 82). Mr. Nicodemo believed that Mr. Battacharia was Italian or Hispanic by the vowels at the end of his last name (Nicodemo Tr. at 18). Mr. Ambani, however advised Mr. Nicodemo that Roger Battacharia was Indian, and would be the only person who would be orchestrating something against him. (Nicodemo Tr. at 78-82; Ambani Tr. at 70). Mr. Ambani also thought that Mr. Battacharia was behind the e-mails, because he believed that Mr. Battacharia stood to gain from Mr. Ambani being fired by taking his position. Mr. Battacharia never told him that he wanted his position, and it was well-known by Human Resources and within the Marketing Department management that Mr. Battacharia was interested in becoming a brand director. (Ambani Tr. at 70-72, 86; Schuberg Tr. at 25, 31-32).

On May 16, 2013, Ms. Cubbon and Mr. Schuberg questioned Mr. Ambani solely on the e-mails he deleted because Mr. Nicodemo told them that Mr. Ambani's denial was credible. (Cubbon Tr. at 60). Ms. Cubbon only requested access to Mr. Battacharia's e-mail as she deemed him the prime employee suspect and time was of the essence. *See*, May 23, 2013 e-mail from Michelle Cubbon to John Nicodemo (Bates stamped Pernod Ricard 2584), Sheridan Aff. at Ex. "20"; (Cubbon Tr. at 131-132); *see also* Sheridan Aff. Ex. "17".

Mr. Ambani acknowledges that he never complained to anyone at the Company about the e-mails he deleted being allegedly racist or derogatory. (Ambani Tr. at 106-107; Schuberg Tr. at 124). Mr. Ambani testified that he believed the term "American Born Confused Desi" was derogatory. The e-mail stated "American Boy Confused Desi". (Ambani Tr. at 103-104). Mr. Ambani also explained that the term "desi" refers colloquially to people from a Southeast Asian origin, and was not derogatory. (Ambani Tr. at 103). Mr. Ambani also testified that the term "desh" (country) was derogatory, however, Ms. Cubbon's notes reflect that "desh" is not a

5

derogatory term. (Ambani Tr. at 102, 105-106); *compare* Michelle Cubbon's handwritten notes Bates stamped Pernod Ricard 1088-1089, Sheridan Aff. Ex. "18". Mr. Ambani was familiar with these terms as he speaks Hindi; Mr. Battacharia does not and had no knowledge of these terms. (Ambani Tr. 102-105; Battacharia Tr. at 193-194); *see also* Plaintiff's Aff. at ¶4. Ms. Cubbon deemed the references in the e-mails to "Vaisya" and "Fuqua" as derogatory and racist based on what Mr. Ambani told her, although she did not know what either term meant. (Cubbon Tr. at 94, 113). Mr. Ambani did not recognize the term "Vaisya" and did not believe that the reference to him attending the Duke University <u>Fuqua</u> School of Business was derogatory. (Ambani Tr. at 103). In essence, Ms. Cubbon determined what was deemed racially discriminatory in the emails that Mr. Ambani deleted. (Cubbon Tr. at 110-114).

On May 30, 2013, Mr. Schuberg printed "independent research" from an internet search he conducted in preparation for his May 30, 2013 meeting with Ms. Cubbon to question Mr. Battacharia about the emails. This was done ten days after meeting with Mr. Ambani. Schuberg Tr. at 151; Battacharia Tr. at 185-186; Cubbon Tr. at 89-90, 174; *See also*, Sheridan Aff. at Ex. 12. This was the only "research" Mr. Schuberg did regarding the terms in these e-mails. (Schuberg Tr. at 118). Again, it was Ms. Cubbon's opinion and interpretation that these terms were racist, discriminatory, and/or derogatory. (Cubbon Tr. at 112-113). While she claims to have done independent research, nothing was produced by Defendant. (Cubbon Tr. at 82-83, 89-90). Not surprisingly, Ms. Cubbon and Mr. Schuberg could not identify what specifically was derogatory. (Cubbon Tr. at 107-112; Schuberg Tr. at 115-118).

Mr. Battacharia denied sending the e-mails at issue and volunteered his laptop for the Company to review. (Schuberg Tr. at 153; Battacharia Tr. at 206; Cubbon Tr. at 176). Neither Pernod Ricard's IT department or Ms. Cubbon reviewed Mr. Battacharia's company laptop after

he returned it. (Cubbon Tr. at 182). In fact, Pernod Ricard destroyed his business laptop that he had used at the time the e-mails were allegedly sent.[9]  Although Ms. Cubbon requested that Mr. Battacharia provide his home IP address at the meeting, she knew that he could not obtain it, and admitted that it was irrelevant whether Mr. Battacharia had provided them with a matching IP address. (Cubbon Tr. at 196, 204).

Nevertheless, on June 3, 2013, Ms. Cubbon recommended termination of Mr. Battacharia's employment to Emmanuel Cargill, Senior Vice-President - Human Resources and Bryan Fry-Pernod Ricard's Chief Executive Officer, based on the information she collected, highlighting that Mr. Battacharia did not provide Pernod Ricard with a matching IP address to the emails, IDT911, its hired IT vendor, was 99.9% certain that Mr. Battacharia sent the e-mails, and that Pernod Ricard could rule out a rogue IT person impersonating Mr. Battacharia. *See* June 2-3, 2013 e-mail exchange Bates stamped Pernod Ricard 6237-6328, Sheridan Aff. at Ex. "39". Deena Coffman, of IDT911, however, acknowledged that if one called Cablevision "at best" one could call tech support and "it wouldn't be anything to rely upon".[10] Ms. Coffman was also unaware how Ms. Cubbon could make the conclusion that a "rogue IT person" had not impersonated Mr. Battacharia, as it was certainly not based on information IDT911 gave Ms. Cubbon. (Coffman Tr. at 119, 122-123).  This was Ms. Cubbon's own language. (Cubbon Tr. at 209). In fact, Ms. Coffman could not conclude that Plaintiff was the sender of the subject materials, only that the IP addresses matched. (Coffman Tr. at 133).

Mr. Battacharia had never been disciplined before his termination, he exceeded performance expectations, and according to Pernod Ricard, was earmarked for a promotion to

---

[9] *See*, letter from Tarek Maheran, Esq., Defendant's Counsel, to Hon. Paul E. Davison dated July 2, 2014 acknowledging destruction of the laptop computer annexed to the Sheridan Aff. at Ex. "38".
[10] *See*, transcript of the September 12, 2104 deposition of IDT911's Deena Coffman ("Coffman Tr.") at 131-132.  All pages of the Coffman Tr. cited herein are attached to the Sheridan Aff. at Ex. "37".

Brand Director. (Schuberg Tr. at 29-31, 114, 142-143, and 211). Nevertheless, Pernod Ricard wanted to terminate Roger Battacharia before the announcement of Marketing 2.0 on June 4, 2013. *See*, May 30, 2013 e-mail from Bennett Schuberg to Michelle Cubbon (Bates stamped Pernod Ricard 879), Sheridan Aff. at Ex. "12"; (Schuberg Tr. at 157, 232).

The role of Brand Director Tequila, for which Mr. Battacharia was allegedly slated, was changed more than 50% following Mr. Battacharia's termination of employment. *See*, Sheridan Aff. at Ex. "8" and Schuberg Tr. at 234-236.  Mr. Battacharia's "new" position was filled by a Caucasian employee with no spirits marketing experience, although the Company claimed such experience was a prerequisite for the position. *See*, Linked In Profile of Dominic Alcocer, (Bates stamped RB 000439), Sheridan Affidavit at Exhibit "10"; (Schuberg Tr. at 25, 32-34); Offer Letter to Mr. Alcocer (Bates stamped Pernod Ricard 1045-1046), Sheridan Aff. at Ex. "11".

Eleven employees, all Caucasian, were identified to be separated as part of Marketing 2.0. *See*, June 6, 2013 e-mail from Bennett Schuberg to Nancy Figueroa (Bates stamped Pernod Ricard 7208-7209), Sheridan Aff. at "52". Three employees: Jennifer Paret, Annette Quirindango, and Eric Horowitz were terminated because they were <u>not</u> demonstrating at the required levels for their positions and fell below the line in Management's assessment.  *See*, May 30, 2013 e-mail from Tove Parot to Bennett Schuberg with attachment of scripts for the individuals marked for separation by Pernod Ricard, Bates stamped Pernod Ricard 5928-5941, Sheridan Aff. at Ex. "53"; (Schuberg Tr. at 163-168). These three out of the eleven employees were offered severance benefits, contrary to Pernod Ricard's Severance Pay Policy.  Sheridan Aff. at Ex. "53"; (Schuberg Tr. at 168). Mr. Battacharia was intentionally offered nothing

.

## ARGUMENT

A motion for summary judgment should only be granted to a moving party where there is no genuine issue as to a material fact and the moving party entitled to judgment as a matter of law. Fed R. Civ. P. 56(a).   A fact becomes "material" when it affects the outcome of the suit under governing law, and an issue of fact is "genuine" if, based on the evidence presented, a reasonable jury could return a verdict for a non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007).  In reviewing record evidence to determine whether there exists a genuine issue of material fact, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of party against whom summary judgment is sought." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010).   Courts in this Circuit have "repeatedly emphasized 'the need for caution about granting summary judgment to an employer in a discrimination case where ... the merits turn on a dispute as to the employer's intent.'" *Id., quoting Holcomb* v. Iona College, 521 F.2d 130, 137 (2d Cir. 2008).  It is "sparingly used where intent and state of mind are at issue because … careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." *Graham v. L.I.R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  The relevant inquiry here is whether Pernod Ricard acted *unreasonably* when it fired Plaintiff or that it did not believe *in good faith* that Plaintiff violated its policies, so as to create an inference of discrimination based on Mr. Battacharia's protected status. *Roge v. NYP Holdings, Inc.* 257 F.3d 164, 169 (2d Cir. 2001).  As demonstrated by the record evidence, there remains a genuine dispute of material fact on these issues that precludes summary judgment in favor of Defendant.

I.    **PLAINTIFF'S CLAIMS FOR RACE, COLOR, AND/OR NATIONAL ORIGIN DISCRIMINATION UNDER TITLE VII AND THE NYSHRL SHOULD NOT BE DISMISSED AS MATTER OF LAW**

A.    **Plaintiff has established a *Prima Facie* Case of Unlawful Discrimination**

To establish a *prima facie* case of discrimination under Title VII or the NYSHRL, the Court follows the *McDonnell Douglas* burden-shifting rubric.  As conceded by Defendant in its motion papers, the only remaining initial burden for Plaintiff in this case is to show that the adverse employment actions taken by Pernod Ricard were done under "circumstances giving rise to an inference of discrimination based on his membership in a protected class."  *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 803 (1973).[11]    Plaintiff's burden here is minimal, and this Court may even assume for purposes of this present motion that Mr. Battacharia was terminated under circumstances giving rise to an inference of discrimination. *See*, *Howard v. MTA Metro-North Commuter R.R.*, 866 F. Supp. 2d. 196, 205 (S.D.N.Y. 2011) ("Despite the elaborate process set up in *McDonnell Douglas*, Second Circuit case law make clear that a court may simply assume that a plaintiff has established a *prima facie* case and skip to the final step in the *McDonnell Douglas* analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action.")  Nevertheless, if the Court requires a formalistic application of the burden-shifting test, the record evidence easily satisfies Plaintiff's burden.

By way of example, while Defendant contends that its organizational restructuring documents through May 31, 2013 highlights that Mr. Battacharia was to be retained and promoted to "Brand Director" for both Tequila Avión and a new Tequila brand, that promotion *was never communicated to Mr. Battacharia*.( Schuberg Tr. at 24-26).  Indeed, on May 31, 2013 when Mr.

---

[11] Defendant concedes that Plaintiff is as member of a protected category, that he was qualified for his position as Marketing Director for Tequila Avion, and that the termination of employment occurred without an offer of severance. *See*, Pernod Ricard's Memorandum of Law in Support of its Motion for Summary Judgment at p. 12.

Schuberg and Ms. Cubbon ambushed Mr. Battacharia with the e-mails at issue in a brief meeting at an outside sales meeting, there was no mention of a promotion. The reorganization announcement was not made until June 4, 2013 one day after Mr. Battacharia was terminated. (Schuberg Tr. at 232).  More importantly, this role never existed prior to Mr. Battacharia's termination and was subsequently provided to a Caucasian employee with less marketing experience, and Mr. Battacharia's position as Marketing Director – Avión was eliminated. Sheridan Aff. at Ex. "8", (Bates stamped Pernod Ricard 7325); Job offer letter to Dominic Alcocer, Bates stamped Pernod Ricard 1045-1046, at Sheridan Aff. at Ex. "11".

Defendant also seeks to distance itself from the disparate impact analysis that it utilized in eliminating the eleven Caucasian employees as part of Marketing 2.0.  Ms. Cubbon admitted that demographic information that slated Mr. Battacharia as "White" was used in the Company's disparate impact analysis concerning the restructuring. See, disparate impact analysis Bates stamped Pernod Ricard 1847-1860, Sheridan Affidavit at Ex. "58".  Mr. Nicodemo assumed that an Indian person sent the e-mails based on the Indian nomenclature and terms and only targeted Mr. Battacharia once he was advised by Mr. Ambani on May 16, 2013 that he was Indian Nicodemo Tr. at 78-82).  Once targeted as the prime suspect, time became of the essence.  If Mr. Battacharia was to be promoted, there was no urgency in having him terminated the day before the restructuring was announced.  These eleven Caucasian employees were all afforded handsome packages and bonuses in excess of the Pernod's policy.  (Schuberg Tr. at 232-233).

Moreover, three of the eleven employees were terminated for poor performance, which would have disqualified them from receiving severance under the Pernod Ricard policy. Indeed, Eric Horowitz, Senior Brand Manager, Vodka, who Defendant highlights in its moving papers, was terminated for not "demonstrating the required levels" for his position, and "fell below the

11

line" in management's assessment. *See*, e-mail from Tove Parot to Bennett Schuberg with attachment of scripts for individuals marked for separation by Pernod Ricard, Bates stamped Pernod Ricard 5928-5941, Sheridan Aff. at Ex. "52"; (Schuberg Tr. at 164-168). Mr. Battacharia, who the Company admits had no knowledge of the contents of the e-mails to Mr. Fry and Mr. Crane, or the deleted e-mails to Mr. Ambani, and whose position was also eliminated, received nothing.

Similarly, Plaintiff's contention that his internal applications for marketing director starting in 2012 were consistently rebuffed, despite his stellar performance, supports an inference of discrimination. (Battacharia Tr. at 255-256). Over nearly a two year period, Mr. Battacharia repeatedly complained to Mr. Schuberg that others were being hired into positions that he had applied for in the Marketing Department despite his experience and great reviews. (Battacharia Tr. at 154-155). While Mr. Battacharia did not specifically tell Mr. Schuberg because he was being passed over for these positions because of his Indian-American status, he told Mr. Schuberg that he was being treated unfairly, he had more experience and was more qualified, each person put in these positions was Caucasian, and he was the only Indian-American applying for those positions. (Battacharia Tr. at 154-155, 158-159, and 169). The inference was that he was not getting these positions because of a discriminatory reason. (Battacharia Tr. at 150). Mr. Schuberg did not respond. (Battacharia Tr. at 150, 155). Plaintiff had previous brand and marketing experience at Pepsi Cola and MasterCard. *See*, Mr. Battacharia's resume (Bates stamped RB 496-499) annexed as Exhibit "54" to the Sheridan Aff.

Plaintiff testified that he believed that his failure to be hired into these marketing positions was based on his race and/or national origin as he had reviewed their work and they were less qualified. (Battacharia Tr. at 255-257). Mr. Schuberg acknowledged that Mr. Battacharia had

expressed frustration to him about being qualified for these positions. (Schuberg Tr. at 23-24). While Defendant's argue that Mr. Schuberg's testimony about the state of mind of Matt Aeppli, Pernod Ricard's marketing department Vice-President is uncontroverted, there is no documentary evidence in the more than 7,500 pages of documents produced by Pernod Ricard supporting this testimony.   More importantly, Mr. Schuberg never told Mr. Battacharia that he spoke to Mr. Aeppli. (Schuberg Tr. at 24-26).   Instead, when Mr. Battacharia ultimately secured the Marketing Director Tequila Avion position, Mr. Schuberg told him that it was not a true Brand Director position.  (Schuberg Tr. at 28-29; Battacharia Tr. at 238).  Mr. Battacharia was never told about the Brand Director Tequila position.  To the contrary, he was terminated the day before the Marketing 2.0 announcement.  (Schuberg  Tr. at 232).

The inference of discrimination is further satisfied, and thus a *prima facie* case established, if the plaintiff can demonstrate that he was similarly situated to another employee outside of his protected group but treated less favorably.  *See*, *Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003).  While the plaintiff must be similarly situated in "all material respects", the trial court must scrutinize all affidavits and depositions for circumstantial proof, which if believed would demonstrate discrimination. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.2d 1219, 1224 (2d Cir. 1994); *see also*, *Brioch v. Incorporated Village of Southhampton, et al.*, 462 Fed. Appx. 39 (2d Cir. 2012), (holding inference of race discrimination based on plaintiff's EEOC sworn statement and vacating district court's granting of summary judgment). ("Our inquiry is simply whether a rational juror could make an inference of racial discrimination from Broich's sworn statement"). *Id*. at 44; *Brown v. Daikin America Inc*., 756 F.3d 219, 230 (2d Cir. 2014) (finding similarly situated employees based on employees being "subject to the same standards governing performance evaluation and

13

discipline"). As the Second Circuit noted in *Graham*, there is not a rigid standard for what constitutes "all material respects"; rather the relevant analysis is whether the comparators were (1) …"subject to the same workplace standards" and (2) …the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (citations omitted). In considering workplace standards, the Court will also entertain if the comparators have the same decision maker. *Ramos v Marriot International*, 134 F. Supp. 2d 328, 340 (S.D.N.Y. 2001). The cases need not be identical nor should the comparable seriousness require a "myopic examination of the acts alone." *Graham* at 40. (citations omitted).

Defendant's attempt to distinguish Mr. Gers's conduct is unavailing. Mr. Gers and Mr. Battacharia were subject to the same workplace standards (*i.e.*, the Company's same information technology policy and anti-harassment policies). (Battacharia Tr. at 248-249). The Company's Information Technology Policy provides that "Company Systems may not be used to create, display, transmit or access any information that may potentially be offensive, disruptive, illegal, threatening, or harassing." *See*, Pernod Ricard Information Technology Policy (Bates stamped RB 165-177) annexed to the Sheridan Aff. at Ex."55". The Company's IT, E-mail Usage, and Encryption Policy (Bates stamped Pernod Ricard 391-401) states that the transmission of offensive, defamatory, or misleading language is unacceptable and a violation of the policy. *See*, Sheridan Aff. at Ex. "56". Mr. Gers was disciplined for admittedly making statements that were defamatory, offensive, and insubordinate by insulting an executive and casting her in a negative light to upper management utilizing the Company instant messaging system (*i.e.*, he stated in an instant message that Lauren Simkin, VP/GM Wines and Champagnes and member of the executive committee, was unintelligent ("its [sic] more likely that I will grow horns") and that the former CFO at Pernod Ricard, Cuny Thibault, among others had no respect for her.) (Battacharia Tr. at

14

251); *see*, instant message from Mr. Gers and April 5, 2012 job warning memo, Pernod Ricard 7494-7495 annexed to the Sheridan Aff. at Ex. "57".  On the other hand, Mr. Battacharia was accused of, but denied sending e-mails to Bryan Fry and Martin Crane, the subject matter and contents of which the Company admits he could not have possibly known, that purportedly cast John Nicodemo, then CFO, in a negative light to his boss about organizational changes, and sending an e-mail to Mr. Ambani with cultural and personal references that Mr. Ambani treated as spam, and which Battacharia too could not objectively have known, but which the Company believes he would because he is also Indian.  (Ambani Tr. at 62, 69; Nicodemo Tr. at 40; Battacharia Tr. at 193-194).

Moreover, the same decision makers were responsible for how to discipline Messrs. Gers and Battacharia.  Emmanuel Cargill made the decision to terminate Mr. Battacharia.  (Cubbon Tr. at 225). Although Ms. Simkin requested that Mr. Ger's termination, Emmanuel Cargill refused and instead issued a job warning to Mr. Gers and removed him from the Wines team. Sheridan Aff. at Ex. 57; (Schuberg Tr. at 35-40).  Ms. Simpkin expressed her displeasure at the decision. (Schuberg Tr. at 40).   Schuberg justified the decision regarding Mr. Gers because he had never been reprimanded before; neither had Mr. Battacharia. (Schuberg Tr. at 211). Plaintiff and Mr. Gers's situation while not identical were "similarly situated in all material respects."

The cases relied upon by Defendant do not cure the defect in its argument. In *Conway v. Microsoft*, 414 F. Supp. 2d 450, (S.D.N.Y. 2006), plaintiff, an African-American alleged that he should not have been demoted for having a sexual relationship with a subordinate in violation of Microsoft's policy.  Mr. Conway only revealed the relationship when his subordinate made a threat to expose him in response to a negative performance evaluation.  Mr. Conway alleged that he was disparately treated as opposed to two Caucasian employees who engaged in similar conduct. The

15

one comparator was accused of sexual harassment and had a different decision maker; the other engaged in consensual hugging and kissing that the decision maker was unaware of. The *Conway* Court did, however, identify objective differences in conduct, (*e.g.*, a physical fight vs. offensive words, medicating a patient without a doctor's order, and theft). *Conway*, 414 F. Supp 2d at 463. In *Weslowski v. Zugibe*, 14 F. Supp. 3d 295 (S.D.N.Y. 2014), also relied upon by Defendant, Judge Karas assessed whether the plaintiff satisfied the similarly-situated standard for an Equal Protection Clause claim. Plaintiff had been reprimanded for using a work computer to access adult and/or sexually explicit material. *Id.*, at 319. The Court did not discuss policies against harassment, but instead identified similar cases where viewing or distribution of sexually explicit or pornographic material through work computers distinguished the conduct. *Id.* These cases do not change the Second Circuit's analysis in *Graham.* Plaintiff has established a *prima facie* case under Title VII and the NYSHRL.

**B.  Pernod Ricard Did Not Have a Good Faith Belief That Roger Battacharia Violated Its Policies and Therefore Its Claimed Legitimate Reason is a <u>Pretext</u>**

Defendant's argument that it had a legitimate reason for terminating Plaintiff's employment relies solely on results of an IT vendor hired at the behest of Defendant's counsel matching IP addresses and the recommendation of in-house counsel that she believed Plaintiff was the sender of the e-mails at issue and her determination as to what language was derogatory.[12] Plaintiff recognizes that the relevant inquiry for the Court on this motion, however, is not whether Pernod Ricard's investigation was correct, but rather if the proffered reason objectively created a pretext

---

[12] *See*, May 23, 2013 e-mail from Jonathan Kozak to Ms. Cubbon (Bates No. Pernod Ricard 2505-2509), Sheridan Aff. at Ex. "23"; (Cubbon Tr. at 225).

for discrimination. *Lyman v. New York Presbyterian Hospital et al.*, 2014 U.S. Dist. LEXIS 95492 (S.D.N.Y. July 14, 2014).

While the burden shifts back to the Plaintiff to establish that Defendant's rationale was a pretext, that burden is one of the preponderance of the evidence, and is not insurmountable. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).    A plaintiff may establish pretext and thereby successfully oppose summary judgment, by demonstrat[ing] weaknesses, implausibility, inconsistencies, or contradictions in the employer's proffered legitimate nondiscriminatory reason for its action." *Ramos v Marriot International*, 134 F. Supp. 2d 328, 343 (S.D.N.Y. 2001). "…[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Holleman v. Art Crafting, Inc*., 2014 U.S. Dist. LEXIS 139916 at *72 (E.D.N.Y. September 30, 2014) (citation omitted).  The record evidence here, however, demonstrates that the employer's justification while seemingly neutral (*i.e.*, the IP addresses matched) was not only illogical but a pretext for discrimination.

By way of example, at the time the emails were allegedly sent, Mr. Battacharia had not worked with Mr. Ambani for more than seven months. The Company acknowledges that was not privy to the subject matter of these e-mails Bryan Fry and Martin Crane, specifically the discussions between Mr. Ambani and Mr. Nicodemo regarding the Company direction and leadership and/or organizational changes in the consumer insights group, or Mr. Ambani's intentions as contained in the language of the e-mails.  (Ambani Tr. at 68-69; Sheridan Aff. at Ex. 4; *see also*, Nicodemo Tr. at 40).

17

Mr. Ambani told Mr. Nicodemo that Roger Battacharia was Indian, and would be the only person who would be orchestrating something against him.  (Nicodemo Tr. at 78-82) (Ambani Tr. at 70). Mr. Ambani also thought that Mr. Battacharia was behind the e-mails, because he believed that Mr. Battacharia stood to gain from Mr. Ambani being fired by taking his position.   Mr. Battacharia never told him that he wanted his position, and it was well-known by Human Resources and within the Marketing Department management that Mr. Battacharia was interested in becoming a brand director. (Ambani Tr. at 70-72, 86; Schuberg Tr. at 25, 31-32). Ms. Cubbon only requested access to Mr. Battacharia's e-mail as she deemed him the prime employee suspect and time was of the essence.  *See*, May 23, 2013 e-mail from Michelle Cubbon to John Nicodemo (Bates stamped Pernod Ricard 2584), Sheridan Aff. at Ex. 20; (Cubbon Tr. at 131-132); *see also* Sheridan Aff. at Ex. "17".

Mr. Ambani was familiar with these terms as he speaks Hindi. (Ambani Tr. at 102-105). Mr. Battacharia, however, had no knowledge of these terms.  (Battacharia Tr. at 193-194); *see also* Plaintiff's Aff. at ¶4.  Ms. Cubbon deemed the references in the e-mails to "Vaisya" and "Fuqua" as derogatory and racist based on what Mr. Ambani told her, although she did not know what either term meant. (Cubbon Tr. at 94, 113).  Mr. Ambani did not recognize the term "Vaisya" and did not believe that the reference to him attending the Duke University Fuqua School of Business was derogatory. (Ambani Tr. at 103).   Ms. Cubbon determined what was deemed racially discriminatory in the emails that Mr. Ambani deleted.  (Cubbon Tr. at 110-114). Mr. Ambani deleted these emails and acknowledges that he never complained to anyone at the Company about these allegedly racist or derogatory e-mails. (Ambani Tr. at 106-107; Schuberg Tr. at 124).  It was Ms. Cubbon's opinion and interpretation that these terms were racist, discriminating, and/or

derogatory. (Cubbon Tr. at 112-113).  At deposition, neither Ms. Cubbon nor Mr. Schuberg could identify what specifically was derogatory. (Cubbon Tr. at 107-112; Schuberg Tr. at 115-118).

Mr. Battacharia denied sending the e-mails at issue and volunteered his laptop for the Company to review. (Schuberg Tr. at 153; Battacharia Tr. at 206; Cubbon Tr. at 176).  Neither Pernod Ricard's IT department, Ms. Cubbon or IDT911 reviewed Mr. Battacharia's company laptop that he returned. (Cubbon Tr. at Exhibit 182). Ms. Cubbon acknowledged that it was irrelevant whether Mr. Battacharia had provided them with a matching IP address. (Cubbon Tr. at 204).

Ms. Cubbon recommended termination of Mr. Battacharia's employment to Emmanuel Cargill based on the information she collected.  *See* June 2-3, 2013 e-mail exchange Bates stamped Pernod Ricard 6237-6328, Sheridan Aff. at Ex. "39".[13] Mr. Battacharia had never been disciplined before his termination, he exceeded performance expectations, and according to Pernod Ricard, was earmarked for a promotion to Brand Director. (Schuberg Tr. at 29-31, 114, 142-143, and 211). Nevertheless, Pernod Ricard wanted to terminate Roger Battacharia before the announcement of Marketing 2.0.  *See*, May 30, 2013 e-mail from Bennett Schuberg to Michelle Cubbon (Bates stamped Pernod Ricard 879), Sheridan Aff. at Ex. "12"; (Schuberg Tr. at 157).

Plaintiff has provided sufficient evidence for a jury to conclude that the true reason for his firing was discrimination based on his Indian-American protected status.

---

[13] While Defendant may claim that Ms. Cubbon did not ultimately make the termination decision, the Supreme Court had recognized that an employer may be held liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision.  See, *Staub v. Proctor Hospital*, 560 U.S. 411 (2011).

## II.     PLAINTIFF'S CLAIMS FOR RETALIATION UNDER TITLE VII AND THE NYSHRL SHOULD NOT BE DISMISSED AS MATTER OF LAW

Plaintiff's retaliation claim is based on the adverse action taken by Pernod Ricard in connection with his filing for unemployment insurance benefits with the New York State Department of Labor ("NYSDOL").   Defendant does not dispute the first two prongs of a retaliation claims in its moving papers, rather it contends Mr. Battacharia did not suffer an adverse action in connection with his filing for unemployment insurance benefits and, additionally, that there was no causal connection between the two acts.

The United States Supreme Court has held that the scope of the anti-retaliation provision under Title VII (and by implication the NYSHRL) extends to beyond workplace-related or employment-related retaliatory acts or harm. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006).   In *Burlington North*, the Supreme Court held that the temporary loss of wages due to a suspension without pay demonstrated material adversity even though the plaintiff was reinstated with back pay.   ("Many reasonable employees would find a month without a paycheck to be a serious hardship.") *Id.*, at 71-73.   Several courts, including the Southern District, have held that the loss of unemployment insurance benefits presents an analogous situation to Burlington Northern and satisfies the adverse action requirements. *See, Holleman v. Art Crafting, Inc.*, 2014 U.S. Dist. LEXIS 139916 at *151 (E.D.N.Y. September 30, 2014).   Here, Plaintiff was without benefits for nearly a month due to Pernod Ricard's challenge on his right to benefits.[14]

Neither Mr. Schuberg's notes concerning discussions with Mr. Battacharia or his e-mails regarding communication with Mr. Battacharia at the time of the termination or subsequent, reflect

---

[14] Defendant's reliance on *Barriera v. Bankers Trust*, 2003 U.S. Dist. LEXIS 18601 (S.D.NY. October 14, 2003) is also misplaced.   Unlike the present case, Bankers Trust did nothing more than characterize plaintiff's departure as a resignation. *Id.*, at *25.

20

the Company's position on unemployment insurance benefits. *See* Schuberg's June 6, 2013 handwritten notes, Bates stamped Pernod Ricard 860 at Sheridan Aff. at Ex. "47"; (Schuberg Tr. at 228-229). At the time of his termination, Mr. Schuberg told Plaintiff twice that Mr. Battacharia should apply for benefits and there shouldn't be a problem receiving them. (Battacharia Tr. at 223-225). *See also*, Plaintiff's Aff. at ¶10. On July 2, 2013 Pernod Ricard submitted a response to the NYSDOL questionnaire claiming a "Misconduct Discharge" on June 3, 2013. *See*, Sheridan Aff. at Ex. "49".

Moreover, while the Supreme Court in *University of Texas Southwestern Medical Center v. Nasser*, 570 U.S. __, 133 S. Ct. 2517 (2013) held that the "but for" causation applies to retaliation claims under Title VII, it does not preclude a plaintiff from demonstrating causation at the summary judgment stage through temporal proximity. *Kwan v. Andalex Group, LLC*, 737 F.3d 834 (2d Cir. 2013) (noting that five months is not too attenuated). The temporal proximity between plaintiff's assertion of discrimination claims and Pernod Ricard's opposition to Mr. Battacharia's receipt of unemployment benefits here is a matter of weeks.

While it is clear that Mr. Schuberg would have responded to the NYSDOL inquiry "but for" Plaintiff's protected activity, causation, even under the *Nassar* pronunciation, does not require that the retaliation be the sole cause for the employer's actions, rather plaintiff must demonstrate that "the adverse action would not have occurred "in the absence of the retaliatory motive." *Kwan*, 737 F.3d 834, 845. Thus, a plaintiff may show retaliation by demonstrating implausibility or discrepancies in the employer's proffered reason such that a rational tier of fact could find the stated explanation a pretext for discrimination. *Id.*, at 845. Here, although Pernod Ricard claimed misconduct, not only did they remain silent about possible motives for Mr. Battacharia sending the

e-mails, but they refused to submit documents supporting their opposition in light of claimed discriminatory conduct.  A jury should be able to inquire as to what motivated the employer.

### III.   PLAINTIFF'S CLAIMS FOR UNLAWFUL DISCRIMINATION AND RETALIATION UNDER THE NYCHRL SHOULD NOT BE DISMISSED AS MATTER OF LAW

Claims under the NYCHRL must be analyzed separately from federal and state discrimination claims. *Mihalik v. Credit Agricole Cheuvreux North America, Inc.* 715 F.3d 102 (2d Cir. 2013).  Thus, a separate and independent analysis of whether disparate treatment occurred must be undertaken and the totality of the circumstances must be considered in evaluating the alleged unlawful conduct. The burden for a plaintiff is to show that his employer "treated him less well, at least in part for a discriminatory reason." *Id*. at 110.  Although an employer may provide evidence of its legitimate non-discriminatory reasons, summary judgment may only be granted in the employer's favor if it shows as a matter of law that discrimination played no role in the adverse employment action. *Id.* In other words, if the plaintiff responds with "some evidence that at least some of the reasons proffered by Defendant are false, misleading, or incomplete, a host of determinations improperly made only by a jury come into play, and thus such evidence of pretext should almost in every case indicate to the court that a motion for summary judgment must be denied." *Bennett v. Health Management Systems, Inc.*, 92 A.D.3d 29, 45, 936 N.Y.S.2d 112, 124 (1st Dep't 2011).  In other words, summary judgment is only appropriate in NYCHRL cases if the record establishes as a matter of law that a reasonable jury could not find the employer liable under any theory.  *Mihalik*, 715 F.3d at 113. Thus, even if Pernod Ricard had good grounds for discharging, he could still recover for any other differential treatment based on his protected status. *Id.*, at 114.

22

As to the retaliation claim under NYCHRL, the Second Circuit has held that a plaintiff asserting a retaliation claim must show that he "took an action opposing the employer's discrimination… and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112. An employer's act of contesting an employee's right to receive unemployment insurance benefits after assuring he would be entitled to receive such benefits solely because he opposed discriminatory conduct establishes a claim of retaliation. *See*, *Matter of Electchester Housing Project v. Rosa*, 22 A.D. 2d 772, 639 N.Y.S.2d 848 (2d Dep't 1996). Here, plaintiff has satisfied his burdens under the NYCHRL and accordingly the claims should survive summary judgment.

## IV. PLAINTIFF'S ERISA CLAIM SHOULD SURVIVE SUMMARY JUDGMENT AS A MATTER OF LAW

Plaintiff's claims for severance pay burden is primarily evaluated under an abuse of discretion standard, and if not, *de novo*. The deferential abuse of discretion standard is an arbitrary and capricious standard, *i.e.*, if the "determination is 'without reason, unsupported by substantial evidence or erroneous as a matter of law'". *Kirk v. Schindler Elevator Corporation*, 2004 U.S. Dist LEXIS 17402 at *6 (S.D.N.Y. August 31, 2004). The *de novo* standard simply requires a showing that it was unreasonable. *Id.* Plaintiff's claim for severance pay satisfies both standards of review. Three of the eleven employees marked for termination as part of Marketing 2.0 were terminated for poor performance, which would have disqualified them from receiving severance under the Pernod policy. Instead, these three employees were specifically terminated for not "demonstrating the required levels" for his position, and "fell below the line" in management's assessment. *See*, e-mail from Tove Parot to Bennett Schuberg with attachment of scripts for individuals marked for separation by Pernod Ricard, Bates stamped Pernod Ricard 5928-5941, Sheridan Aff. at Ex. "52";

23

Schuberg Tr. at 164-168.  Mr. Battacharia, who the Company admits had no knowledge of the contents of the e-mails to Mr. Fry and Mr. Crane, or the deleted e-mails to Mr. Ambani, and whose position was also eliminated <u>the day before</u> these three other employees were terminated, received nothing.  Moreover, the role of Brand Director Tequila, for which Mr. Battacharia was allegedly slated, was changed more than 50% following Mr. Battacharia's termination of employment.  *See*, Sheridan Aff. at Ex. "8" and Schuberg Tr. at 234-236.  Mr. Battacharia's "new" position was filled by a Caucasian employee with no spirits marketing experience, although the Company claimed such experience was a prerequisite for the position. *See*, Linked In Profile of Dominic Alcocer, (Bates stamped RB 000439), Sheridan Aff. at Ex."10"; (Schuberg Tr. at 25, 32-34); Offer Letter to Mr. Alcocer (Bates stamped Pernod Ricard 1045-1046), Sheridan Aff. at Ex. "11".  Undoubtedly, Pernod Ricard abused its discretion.

Finally, even if the content of the e-mails was a factor in the decision to terminate Mr. Battacharia's employment (because that it is really all the definitive information that Pernod had at the time had it made the decision to terminate Mr. Battacharia), such information does not prevent him from receiving severance benefits under ERISA. Section 510 of ERISA prohibits employers from firing employees to prevent them from attaining a benefit.   The Second Circuit has held that a Section 510 violation may be established either through direct or circumstantial evidence.  A plaintiff can prevail in the mixed motive context, *i.e.*, where the employer harbors both illicit and proper motives. "An essential element of plaintiff's proof under the statute is to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by §510." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988). Additionally, at least one federal court has held that a Section 510 claim may survive summary judgment even where employees are fired allegedly "for cause".  *See*, *Leszczuk v. Lucent Technologies, Inc.*, Civ. No.

24

03-CV-05766 (E.D. Penn. June 10, 2005) (court noted that the temporal proximity of an investigation leading to the firing weighed heavily in denying summary judgment.)

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

Markus & Sheridan, LLP
116 Radio Circle, Suite 304
Mount Kisco, New York 10549
(914) 241-6300

By: _____
Marc O. Sheridan, Esq.
*Attorneys for Plaintiff*

Dated: February 2, 2015
Mount Kisco, New York

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

ROGER BATTACHARIA,

                              Plaintiff,

            -against-

PERNOD RICARD USA, LLC,                    Civ. No.:  13-CV-7222 (NSR) (PED)

                              Defendant.

-------------------------------------------------------X

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing Plaintiff's

Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment was served

via UPS, this 2nd day of February, 2015 on the Defendant Pernod Ricard USA, LLC through its

counsel of record, at the address set forth below:

Jonathan Kozak, Esq.
Jackson Lewis, P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
*Attorneys for Defendant*

_____
            Marc O. Sheridan